[Crim. No. 942.   Fourth Dist.   Nov. 3, 1953.]

THE PEOPLE, Respondent, v. RAYMOND HERNANDEZ, Appellant.

Cunningham, Parry & Holcomb and Charles E. Ward for Appellant.

Edmund G. Brown, Attorney General, and Alan R. Woodard, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with driving a motor vehicle while under the influence of intoxicating liquor, in violation of section 501 of the Vehicle Code. After a trial, he was found guilty by the court sitting without a jury, and he appeals from the judgment.

This action resulted from a collision which occurred about 10 p. m. on June 7, 1952, on Highway 99. At the point involved, this was a divided highway with two traffic lanes each way. The eastbound lanes were separated from the westbound lanes by "22 feet of dirt island and a difference in elevation" of 6 feet. At the time in question a sheriff's car, driven by a deputy and with two passengers, was proceeding easterly in the southerly lane. A Ford car, which was proceeding east in the same lane about 25 feet ahead of the sheriff's car, suddenly swerved to the left to avoid a Plymouth car which was coming downgrade traveling west on the eastbound lanes. The Plymouth car sideswiped the Ford car and ran head-on into the sheriff's car, injuring its three occupants. The sheriff's car and the Plymouth car stopped within 6 inches of each other, and the Ford car stopped on the island between the two roads.

Several officers arrived at the scene shortly afterward, and the only occupant of the Plymouth car was taken in an ambulance to the county hospital. There was convincing evidence that the defendant was driving the Plymouth car at the time and that he was intoxicated. The driver of the sheriff's car and the driver of the Ford car, within two minutes after the accident, looked into the Plymouth car and saw only one person. This person was on the driver's side, under the steering wheel, with the upper part of his body lying over toward the right side. They did not see anyone leave that car. Two officers who removed the man from the Plymouth car testified positively that the defendant was the man they took from the car. One testified that he appeared to be unconscious, and the other testified that he appeared to be in a daze. One testified that he smelled the defendant's breath at that time and that it was "very strong alcoholic." The other officer testified that he got in the ambulance with the defendant and helped to hold the stretcher in position, and that en route to the hospital the defendant was groggy, "smelled of alcohol and mumbled and singing." Two highway patrol officers saw the defendant at the county hospital about midnight and testified that his breath was alcoholic; that there was a strong odor of alcohol; that his speech was incoherent; that it was hard to understand him; and that he was "wild and hollering" at times. Based on their experience in seeing people under the influence of liquor one expressed the opinion that he was drunk, and the other that he was under the influence of intoxicating liquor.

These highway patrol officers also testified with reference to

assisting in taking what is referred to as an "intoximeter" test. A part of this test consisted of having the defendant blow up a rubber balloon so that the contents could later be analyzed when the air was allowed to escape. A chemist, who ran a laboratory, testified that he used the air from this balloon in making various tests by which he could determine the blood-alcohol concentration present in the person breathing the air into the balloon. This witness then testified as to the blood-alcohol content he found and the effect it would have.

Another officer testified that in a conversation at the county hospital the next morning the defendant told him that he owned a 1940 Plymouth; that his driver's license had been cancelled four years before; that he had had two drinks before the accident; that no one was with him in the car; that the accident happened about 4 or 5 in the afternoon; that he could not remember where the accident happened; and that he could not tell anything more about the accident. He also testified that when asked how the accident happened, the defendant replied "I claim they ran into me."

The appellant first contends that the evidence fails to disclose "by reasonable and probable means" that he was operating the vehicle in question, and that his admissions the next morning should not have been admitted because the "corpus delicti" was not sufficiently established. It is argued that the driver of the sheriff's car was unable to identify him as the person who was in the Plymouth car, and that the testimony of the two officers who identified him as the person they took from the Plymouth car was unworthy of belief because of certain discrepancies in their testimony, and because they were unable to describe certain details of the features and clothing of the person they took from the car. The driver of the sheriff's car was suffering from broken ribs, and was mainly occupied in caring for the other injured occupants of his car. The minor discrepancies appearing in the testimony of these two officers is only natural in view of the circumstances, and the confusion incident to caring for several injured people. It would have been more suspicious if they had told exactly the same story with respect to all minor details, after the lapse of several months. The appellant was positively identified as the person who was removed from the Plymouth car and taken to the hospital, and the evidence was sufficient to justify an inference beyond any reasonable doubt that he was the driver of that car. His admissions the next

morning were properly received in evidence. There is no merit to the contention that these admissions were not sufficiently related to the accident here in question, since the appellant's statement that he was driving "when this accident happened" may have had reference to another accident which happened at 4 or 5 p. m. the preceding afternoon. In view of the evidence, there could be no reasonable doubt that the appellant was taken to the hospital from the scene of this particular accident.

It is next contended that it was error to admit evidence concerning the taking of this intoximeter test because it was taken without appellant's consent, and that it was error to admit the testimony of the chemist with respect to his findings in that connection, and particularly in permitting him to testify concerning the effect of his findings. It is unnecessary to consider at length the various arguments made in this connection. There is some evidence that the appellant consented to this test by voluntarily breathing into the balloon, and the chemist who testified in this connection qualified as an expert witness. In any event, and assuming any error in this connection, it cannot be held to be prejudicial in view of the strong and convincing evidence of intoxication which otherwise appears. In deciding the case, the trial judge reviewed the evidence on intoxication, including many corroborating circumstances, and then observed that the evidence concerning the intoximeter test was further corroboration. The judge correctly summarized the evidence on this issue when he said: "He was so intoxicated that he didn't even know what had happened or where he was or at what time it took place." The evidence amply supports the judgment and no reversible error appears.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.